# ATTACHMENT "2"

 **®Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:**     Debra Huerter
General Reinsurance Corporation
120 Long Ridge Rd
Stamford, CT 06902-1843

**RE:**     **Process Served in California**

**FOR:**    General Reinsurance Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | CITY OF OCEANSIDE vs. GENERAL REINSURANCE CORPORATION |
| **CASE #:** | 37202200040215CUICCTL |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/13/2023 at 10:33 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Debra Huerter  dhuerter@genre.com |
| | Email Notification,  Sarah Kutner  sarah.kutner@genre.com |
| | Email Notification,  Danuta Mszal  dmszal@genre.com |
| **REGISTERED AGENT CONTACT:** | Amanda Garcia |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 866-401-8252 |
| | EastTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Fri, Jan 13, 2023
**Server Name:**                   reggie richardson

| Entity Served | GENERAL REINSURANCE CORPORATION |
|---|---|
| Case Number | 37-2022-00049215-CU-IC-CTL |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

General Reinsurance Corporation; and Does 1 through 20, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

City of Oceanside

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED** |
| Superior Court of California, |
| County of San Diego |
| **12/08/2022** at 08:26:08 PM |
| Clerk of the Superior Court |
| By Taylor Crandall, Deputy Clerk |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court

330 W. Broadway, San Diego CA 92101

| CASE NUMBER: |
|---|
| 37-2022-00049215-CU-IC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Albert E. Haverkamp, Lucas & Haverkamp Law Firm, 2211 Encinitas Blvd., #225 Encinitas CA 92024 (858) 204-4634

| DATE: *(Fecha)* 12/09/2022 | Clerk, by *(Secretario)* T. Crandall T. Crandall | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*   GENERAL REINSURANCE CORPORATION

under: ☒ CCP 416.10 (corporation)            ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Albert E. Haverkamp [Bar No. 151830]
**LUCAS & HAVERKAMP LAW FIRM**
A Professional Corporation
Attorneys at Law
2211 Encinitas Blvd., Suite 225
Encinitas, California 92024
ahaverkamp@lucashaverkamp.com
(858) 204-4634 ♦ Facsimile (858) 535-4001

Attorneys for Plaintiff
CITY OF OCEANSIDE

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/08/2022** at 08:26:08 PM

Clerk of the Superior Court
By Taylor Crandall, Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| CITY OF OCEANSIDE,<br><br>        Plaintiff,<br><br>   v.<br><br>GENERAL REINSURANCE<br>CORPORATION; and<br>Does 1 through 20, inclusive,<br><br>        Defendants. | **CASE NO.** 37-2022-00049215-CU-IC-CTL<br><br>I/C JUDGE:<br>DEPT.:<br><br>**COMPLAINT FOR BREACH OF<br>CONTRACT, BREACH OF THE<br>IMPLIED COVENANT OF GOOD<br>FAITH AND FAIR DEALING, AND<br>DECLARATORY RELIEF**<br><br>**IMAGED FILE** |

Plaintiff alleges on information and belief the following:

1.  Defendant General Reinsurance Corporation ("GRC") is, and at all times mentioned was, an insurance company authorized to conduct insurance business and conducting insurance business in the state of California. GRC is qualified to do business in California and is registered with the California Secretary of State.

2.  Defendants Does 1 through 20, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When their true names and capacities are ascertained, plaintiff will amend this complaint by inserting their true names and

capacities herein.  Plaintiff is informed and believes that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by those defendants.

3.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants, including all defendants sued under fictitious names, was the agent and employee of each of the remaining defendants, and in doing the things thereafter alleged, was acting within the course and scope of this agency or employment.

4.      Defendants' conduct alleged herein occurred in and caused damage to plaintiff in the County of San Diego, State of California.

## FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT AGAINST ALL DEFENDANTS)

5.      At all relevant times herein, plaintiff had in effect a written insurance policy with defendants, which policy provides coverage for plaintiff's responsibility for workers' compensation payments to its covered employees, plus claim expenses.

6.      Defendants' policy insuring plaintiff for workers' compensation payments to its covered employees plus claim expenses is Policy Number XD-078 for the period of February 1, 1990 to May 15, 1994. The policy is attached hereto as Exhibit 1. The policy requires defendants to promptly indemnify plaintiff when plaintiff's expenditures (workers' compensation payments plus claim expenses) on a particular worker's claim falling within the policy period exceed the policy's $250,000 self-insured retention.

7.      Plaintiff paid all premiums due under the policy and fully performed, or is excused from performing, all its duties, terms and conditions required by the policy.

8.      Pursuant to California Workers' Compensation Law, plaintiff has paid or incurred liability to pay Workers' Compensation claims plus claim expenses in excess of $250,000 on the following claims:

        (a)     Claimant:  Karen Rosan
                Date of Injury:  March 26, 1992
                City Claim #:  3502

GRC Claim #: G10024114

(b)     Claimant: Norman Sherburne
        Date of Injury: May 28, 1993
        City Claim #: 3933
        GRC Claim #: G10024112

These claims are hereinafter collectively referred to as the "Underlying Claims."

9.      On each of the Underlying Claims, plaintiff has timely and in accordance with the policy's terms submitted requests for indemnity to defendants for amounts (workers' compensation payments and claim expenses) in excess of $250,000. Defendants have withheld payment to plaintiff and have adopted a pattern and practice of wrongful and bad faith claims evaluations, during which defendants have withheld benefits under the pretext of continuing to investigate while they assert a variety of challenges and excuses.

10.     Despite repeated demands, defendants have refused to reasonably and timely investigate, refused to provide legitimate, reasonable or accurate reasons for their withholding of benefits owed, and have unreasonably withheld benefits owed to plaintiff.

11.     As a proximate result of the acts of defendants, plaintiff has been damaged in an amount in excess of $500,000, subject to proof at trial.

12.     As a further proximate result of the acts of defendants, as more fully described herein, plaintiff has been forced to incur expenses, including attorney's fees and costs, to pursue and recover benefits that are being unreasonably withheld.

## SECOND CAUSE OF ACTION
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS)

13.     Plaintiff realleges and incorporates here by this reference each of the above allegations.

A. The Rosan Claim

14.     Ms. Rosan suffered a single psychiatric cumulative trauma ("CT") injury due to being exposed to gruesome violent death crime scenes during her training to become a police

3

1  officer with the City of Oceanside. Ms. Rosan's first assignment after leaving the Oceanside

2  Police Academy was in February of 1992.  At this time rather than being assigned for training

3  to a regular training officer, she was assigned to train with uniformed crime investigator,

4  Officer Russ Cahhal, on the night shift. Officer Cahhal's role was to investigate and collect

5  evidence at "hot calls" and other critical incident crime scenes.  As a result of this assignment,

6  Ms. Rosan was immediately involved with investigating multiple gruesome violent death

7  scenes which caused her to suffer PTSD/extreme anxiety.  She was taken off work on 3/26/92

8  and remained off work until 4/9/92.  The City's worker's compensation investigation report of

9  3/26/92 states Officer Rosan "alleges that she is having emotional problems/inability to

10  concentrate due to recent exposure to violent death scenes" and lists the activity at the time of

11  injury as "investigation of death scenes."  Ms. Rosan submitted a worker's compensation

12  claim to the City on 4/1/92 asserting "mental duress."  Ms. Rosan returned to work more

13  regular patrol type duties on 4/9/92 and was not further exposed to violent gruesome death

14  scenes.  However, her prior involvement with the violent death scenes (from March of 1992)

15  continued to haunt her and her anxiety increased to the point where it was determined she

16  could no longer work as a police officer.  She last worked for the City on 8/25/93.

17         15.     The GRC policy covers CT injuries when the injured employee's last day of last

18  exposure to injurious work conditions is during the GRC policy period.  Here, Ms. Rosan's

19  "last day of last exposure" was either 3/26/92 (when after investigating the grisly violent death

20  scenes she developed PTSD and missed two weeks of work) or 8/25/93 (her last day of work

21  for the City of Oceanside).  Both of these "last day of last exposure" dates are within the GRC

22  policy period. In order to disclaim its policy obligations, and even though it acknowledged

23  Ms. Rosan's last day of work was 8/25/93, GRC falsely asserted the "last day of last

24  exposure" was September of 1994 when the City granted Ms. Rosan a disability retirement. Of

25  course, it would be impossible for Ms. Rosan to be exposed to injurious work conditions when

26  she wasn't working, but GRC promoted this fiction because September of 1994 was beyond

27  the GRC policy.  This was all part of GRC's plan of dissembling and misrepresentation in

28  order to intimidate and deter its insured from obtaining policy benefits.

16.     GRC also falsely and inaccurately maintained that Ms. Rosan's psychiatric injury was a product of multiple separate injuries. GRC made this assertion because each separate injury under the GRC policy is a separate "occurrence" to which an additional $250,000 self-insured retention applies. Thus, according to GRC, since multiple injuries were involved, multiple retentions had to be exceeded resulting in no reimbursement being owed to the City. However, in making this false contention, GRC purposefully ignored clear medical evidence establishing that Ms. Rosan suffered only a single CT injury.  For example, in early October 1993 the City noted there was an issue whether Ms. Rosan's period of working from April 1992 to August 1993 might constitute a new injury, which would require opening a new and separate claim.  At this point the City's representative indicated the upcoming report of psychiatrist Dr. Reiss would be determinative of this question.  Dr. Reiss' report of October 31, 1993, makes it clear Ms. Rosan suffered only a single CT injury and thus the City did not open a new claim.  More specifically, Dr. Reiss wrote that "Ms. Rosan perceives her emotional difficulties to be related to work the same way as the first incident" and "she referred to several traumatic circumstances which she attended to in her performance of her police duties, as having contributed to a build up of emotional tension and discomfort" and "Ms. Rosan stated that she believes the violent scenes which she attended have unleashed violent impulses within herself with which she is very uncomfortable." Dr. Reiss then states "it is my opinion that Ms. Rosan's difficulties are due to a combination of pre-existing vulnerabilities, concurrent personal stresses … as well as the taxing of defense mechanisms in attempting to cope with the emotions elicited by attending to various violent and traumatic situations.  This represents a continuation of the difficulties which began in 1992, and never completely resolved." Dr. Reiss' findings were consistent with the information the City received from Ms. Rosan's supervisor, Lieutenant Gallardi, who advised he was surprised Ms. Rosan needed more time off as nothing new had occurred, she was doing well, and this must be related to the residuals from the earlier incident.  GRC purposefully ignored the report of Dr. Reiss in withholding benefits from its insured.  As support for its contention Ms. Rosan's injury constituted multiple injuries, GRC notes the AME physician, Dr. Houts, identified three

5

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

1  separate dates of injury (3/7/92, 4/92, and 4/92 to 8/93).  This is purposefully misleading.
2  While Dr. Houts did, in his report of November 14, 1994, list the three "injury" dates in the
3  heading of the letter, these "heading" dates just repeated the dates of the worker's
4  compensation claims which Ms. Rosan had submitted to the City and which Dr. Houts had
5  learned about from workers' compensation counsel. These "heading" dates are clearly just set
6  forth solely for purposes of reference. Any reasonable reading of the text of Dr. Houts' report
7  shows only a basis for a single CT injury arising out of Ms. Rosan's involvement with the
8  March 1992 death scenes.  Dr. Houts focuses on the injurious events – the violent death scenes
9  Ms. Rosan helped to investigate in March of 1992 – as the precipitator of her
10 emotional/psychiatric problems.  He concludes that "in the absence of the specific and
11 recurring traumas she witnessed in her work for the Oceanside Police Department, there is no
12 reason to believe that she would have sought treatment as a psychiatric patient ...." There is
13 no indication in Dr. Houts' report of multiple separate injuries.  GRC's reference solely to the
14 heading of Dr. Houts' report to support the existence of multiple injuries is just GRC
15 selectively cherry-picking any item which might cast doubt upon coverage, while wholly
16 ignoring all the facts which show reimbursement was owed to the City.

17       17.     GRC also falsely asserted, as another basis for withholding policy benefits, that
18 the City had paid numerous expenses related to the treatment of Ms. Rosan's back. Ms. Rosan
19 did not suffer an industrial back injury while she worked at the City of Oceanside, so GRC
20 was, in essence, asserting that the City mismanaged the claim & unnecessarily paid for
21 expensive medical treatment that it was not required to pay for and thus was not reimbursable
22 under the GRC policy.  However, the true facts, of which GRC was aware, are that the City
23 objected to paying for any of Ms. Rosan's back treatment, and directed its worker's
24 compensation defense counsel to retain a separate doctor to determine which of Ms. Rosan's
25 medications were related to her psychiatric injury and which were related to her treatment for
26 her non-industrial back injury. The end result was the City never paid for any of Ms. Rosan's
27 back treatment and only paid for Ms. Rosan's medications which the independent doctor
28 advised were for the treatment of her industrial psychiatric injury.  This fabricated "issue" of

1  "back payments" was raised by GRC solely for the purpose of deception, deflection, and

2  distraction in furtherance of GRC's goal of withholding policy benefits to its insured.

3          B. The Sherburne Claim

4       18.   Mr. Sherburne worked at the City of Oceanside as a firefighter. On 5/28/93 he

5  suffered a sudden, acute industrial caused myocardial infarction which required immediate

6  hospitalization. On 5/31/93 he underwent am emergency angioplasty. He was hospitalized

7  from 5/28/93 to 6/6/93. Thereafter he was out of work for 5 months. Mr. Sherburne's sudden

8  and acute heart attack was a clear specific injury which took place during the GRC policy.

9       19.   Despite clear coverage under the GRC policy, GRC has withheld

10  reimbursement to the City, raising several false and inaccurate impediments to its contractual

11  obligation to reimburse the City. For example, GRC falsely accused the City of improperly

12  merging two other workers' compensation claims filed by Mr. Sherburne into the 5/28/93

13  specific injury claim. These other claims were very minor claims from 1986, involving a knee

14  strain and nose injury. GRC's purpose in making this false accusation was to suggest the City

15  paid benefits under the 5/28/93 claim which were really related to the 1986 injuries, which

16  were prior to the GRC policy, and thus the City's reimbursement request was improper and

17  flawed. However, it was patently obvious there was never any improper merger of the 1986

18  claims and the 1993 heart claim. The 1986 claims were seven years prior, involved different

19  body parts, had been inactive for years, and had their own separate claim numbers and claim

20  files. The City never paid for knee or nose treatment under the 1993 heart claim and it was

21  preposterous for GRC to suggest this occurred. The only connection between the 1986 claims

22  and the 1993 heart claim is that the 1995 Compromise and Release ("C&R") entered into by

23  the City and Mr. Sherburne to resolve his heart claim did include the 1986 claims. However,

24  the inclusion of these claims in the C&R does not reflect a merger of these claims with the

25  1993 heart claim, rather their inclusion in the C&R was merely to acknowledge the formal

26  closure of the long inactive 1986 claims. This practice of including old and inactive claims in

27  the C&R of a significant and active claim was routinely utilized by WC defense counsel as a

28  matter of housekeeping and closure and GRC was well aware of this. The C&R itself makes it

7

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

1 clear no payments were made under the 5/28/93 claim for the 1986 knee and nose injuries

2 stating: "Applicant sustained injuries in 1986 for his left knee and nose for which there was no

3 time lost and only rudimentary medical treatment given. No permanent disability resulted

4 from these injuries and the statute of limitations has run on them. The parties wish to

5 incorporate those injuries into this settlement." The C&R only provides future medical care

6 for Mr. Sherburne's heart and cardiovascular system.

7     20.    Another false impediment to reimbursement raised by GRC is that Mr.

8 Sherburne's sudden and acute heart attack constituted two separate injuries, part specific and

9 part CT, to which two separate retentions apply. In raising this impediment GRC ignored the

10 obvious medical evidence that the heart attack was a sudden and significant traumatic event

11 requiring immediate hospitalization and emergency surgery, factors entirely inconsistent with

12 a CT injury.

13     21.    GRC also seized upon incorrect information set forth in a single sentence of a

14 medical report to insist Mr. Sherburne suffered a second heart attack in July of 1994. A second

15 heart attack in July of 1994 would entail a second injury outside of GRC's policy to which

16 claim expenditures would have to be apportioned.  However, the medical records clearly show

17 there was never a second heart attack, much less one in July of 1994 which resulted in Mr.

18 Sherburne not missing any work. GRC ignores these facts, fixating only on items which might

19 create a coverage question. GRC then compounded this misconduct by asserting, without any

20 possible basis, that the City's alleged combination of multiple injuries had "resulted in the

21 contamination of the medical records and financial documents."

22     22.    In every insurance policy, including the policy issued by Defendants to Plaintiff,

23 there is an implied covenant of good faith and fair dealing that the insurer will not unfairly

24 deprive the insured of benefits due under the policy, act unreasonably or place its own

25 interests above the interests of the insured.  Defendants herein were bound by said implied

26 covenant in their dealings with Plaintiff.

27     23.    In the course of stonewalling and asserting improper excuses for withholding

28 benefits owed to plaintiff, defendants breached the implied covenant of good faith and fair

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

dealing by, among other things: failing and refusing to thoroughly and fairly investigate plaintiff's claims for benefits, failing and refusing to evaluate plaintiff's claims objectively and instead looking for reasons to withhold benefits, asserting false and inaccurate grounds for withholding benefits, employing unreasonable, unduly restrictive standards or policy interpretations in denying benefits, failing to give plaintiff's interests equal consideration to their own interests, and forcing plaintiff to institute litigation to obtain benefits due.

24.    Defendants have engaged in a pattern and practice of withholding reimbursement due to plaintiff on the Underlying Claims.  Defendants' pattern and practice of withholding benefits on the Underlying Claims has taken the form of the following tactics:

— Any claim review was done from the standpoint of a pre-determination that reimbursement would be withheld;

— The sole focus of any claim review was a search to identify any purportedly plausible reason to delay or withhold policy benefits;

— Misrepresenting the coverage provided by the policy;

— Taking a hostile attitude towards its insured and wrongfully accusing its insured of misconduct and improper claims handling;

— Misrepresenting the policy's terms;

— Misrepresenting California law;

— Insisting on arbitrary and unreasonable interpretations of the policy;

— Engaging in dilatory claims handling by insisting on being provided more records and documents when it had already been determined benefits would be withheld;

— Engaging in deceptive practices to avoid paying on a claim;

— Ignoring and shunning requests for Policy benefits.

23.    Defendants have engaged in this course of conduct unreasonably and in bad faith for the purpose of unfairly placing their interests above those of plaintiff and to withhold benefits due to plaintiff.  An officer, director or managing agent of Defendants had advance

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

knowledge of the above-described wrongful conduct or authorized and/or ratified all such conduct.

24.     Defendants' conduct was malicious, despicable, oppressive and fraudulent and was done in conscious disregard of plaintiff's rights, thereby justifying the imposition of punitive damages in an amount sufficient to punish, make an example, and to deter such conduct in the future.

### THIRD CAUSE OF ACTION
### (DECLARATORY RELIEF AGAINST ALL DEFENDANTS)

25.     Plaintiff realleges and incorporates here by this reference each of the above allegations.

26.     An actual controversy exists between plaintiff and defendants in that plaintiff contends defendants owe a duty to indemnify plaintiff on the Underlying Claims for all monies paid or required to be paid to workers under California Workers' Compensation Law plus claim expenses that exceed plaintiff's self-insured retention and defendants deny such a duty exists. Accordingly, plaintiff seeks a judicial declaration of the rights and duties of defendants under the above-alleged policies. In addition, the Rosan Claim remains an open claim and the City seeks a declaration that GRC has a continuing obligation to reimburse the City for future claim expenditures which the City incurs on the Rosan Claim.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1.      for compensatory damages according to proof;

2.      for pre-judgment and post-judgment interest as allowed by law;

3.      for costs of suit incurred herein;

4.      for attorney fees as allowed by law;

5.      for punitive damages according to proof, and

6.      for such other and further relief as the Court may deem proper.

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

Respectfully submitted,

**LUCAS & HAVERKAMP LAW FIRM**

Dated:  November 18, 2022

By:
ALBERT E. HAVERKAMP
Attorneys for Plaintiff
CITY OF OCEANSIDE

11

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, AND DECLARATORY RELIEF**

# EXHIBIT 1

GENERAL REINSURANCE CORPORATION
Financial Centre, P.O. Box 10350, 695 East Main Street,
Stamford, Connecticut 06904-2350
(Referred to as The "Insurer")
Excess Insurance Policy For Self-Insurer Of
Workers Compensation and Employers Liability
**INFORMATION PAGE**

Policy No. XD-078

1. **Insured:** San Diego County Cities Risk Management Authority

2. **Mailing Address:** c/o City of Encinitas
527 Encinitas Boulevard
Encinitas, California  92024

3. **Effective Date of Policy:** February 1, 1990

4. **Cancellation Notice:** Thirty (30) Days Written Notice, Subject to Part Seven - Conditions, Paragraph L

5. a. **Workers Compensation Insurance:** Part One of the policy applies to the Insured's obligations under the Workers Compensation Law of the States listed here: California

   b. **Employers Liability Insurance:** Part Two of the policy applies to the Insured's obligations in each State listed in Item 5a.

   c. **Other States Insurance:** Part Three of the policy applies to the Insured's obligations in all other States, except those listed here:

6. Insured's Retention for each accident or each employee for disease   $   250,000.

7. Insurer's Limit of Indemnity for each accident or each employee for disease:
   a. For Workers Compensation Insurance                          $   10,000,000
   b. For Employers Liability Insurance                           $    5,000,000
   c. For Workers Compensation and Employers Liability
      Insurance Combined                                          $   10,000,000

8. The premium for this policy will be determined on the basis of the information shown below, subject to verification and change by audit:

| Total Estimated Annual Remuneration | Rate per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|
| $ 122,308,351 | $ .159 | $ 194,470 |

| | | |
|---|---|---|
| Total Estimated Annual Premium | $ | 194,470 |
| Advance Premium for this Policy | $ | 195,000 |
| Minimum Annual Premium | $ | 150,000 |
| Interim Policy Adjustment Period | Annual | |

Signed at Stamford, Connecticut, this 27th day of February, 1990

GENERAL REINSURANCE CORPORATION

_Authorized Signature_

GRC-I2

ENDORSEMENT                    NO. 1

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.   XD-078    EFFECTIVE DATE OF ENDORSEMENT    February 1, 1990

This policy is changed to provide:

Item 1 of the Information Page is changed to include the following self-insurers in the state listed below:

Californin:

City of Chula Vista
Redevelopment Agency of the City of Chula Vista
Industrial Development Authority of the City of Chula Vista
City of Coronado
City of Coronado Improvement Corporation
Community Development Agency of the City of Coronado
City of Encinitas
Encinitas Redevelopment Agency
Encinitas Sanitary District
Cardiff Sanitation District
City of Escondido
Escondido Mutual Water Company
Community Development Commission of the City of Escondido
City of La Mesa
La Mesa Community Redevelopment Agency
City of La Mesa Parking Authority
City of National City
The Parking Authority of the City of National City
Community Development Commission of the City of National City
Industrial Development Authority of the City of National City
City of Oceanside
City of Oceanside Bridge Corporation
City of Oceanside Community Development Commission A Public Corporation Part of the
    City of Oceanside
City of Santee

Page 1 of 2

GRC-I1

**ENDORSEMENT**                    NO.   1

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.   XD-078    EFFECTIVE DATE OF ENDORSEMENT    February 1, 1990

────────── This policy is changed to provide: ──────────

Item 1 of the Information Page is changed to include the following self-insurers in the state listed below:

    <u>California:</u>

    Santee Redevelopment Agency
    City of Vista
    Vista Sanitation District
    Vista Fire Protection District
    Vista Joint Powers Financing Authority

    All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 27th day of February, 1990

           GENERAL REINSURANCE CORPORATION

                        Authorized Signature

Page 2 of 2
SI-EP-12

GRC-I1

## ENDORSEMENT                              NO. 2

**INSURED**        San Diego County Cities Risk Management Authority

**POLICY NO.** XD-078    **EFFECTIVE DATE OF ENDORSEMENT**   February 1, 1990

## CLAIMS ADMINISTRATION ENDORSEMENT

The policy is changed to provide:

Part Seven - Condition P. is added to this policy:

P.  Administration of Losses

The Insured will maintain a contract with the following claims service organization for any claims within the coverage of this policy:

| Claims Service Organization | State |
|---|---|
| Bierly & Associates<br>7750 Naggett - Suite 204<br>San Diego, California  92111 | California |
| North American Claims Management<br>P.O. Box 1278<br>Spring Valley, California  92077-0180 | California |
| City of Oceanside<br>350 North Ditmar Avenue<br>Oceanside, California  92054 | California |

The Insured will give prompt written notice to the Insurer of:

    a.  termination or modification of the contract with the above named organization; or
    b.  if the Insured changes to another claims service organization.

    All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 27th day of February, 1990

                        GENERAL REINSURANCE CORPORATION

                                      Authorized Signature

SI-EP-40b (4/86)

GRC-I1

## ENDORSEMENT                    NO. 3

INSURED        San Diego County Cities Risk Management Authority

POLICY NO.  XD-078    EFFECTIVE DATE OF ENDORSEMENT    February 1, 1990

### EMPLOYERS LIABILITY INSURANCE ENDORSEMENT

Part Two "Employers Liability Insurance" is changed by replacing Paragraph F-6 with the following:

6.  Damages arising out of:   coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee or any personnel practices policies, acts or omissions.

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 27th day of February, 1990

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-44

GRC-J1

## ENDORSEMENT                    NO.  4

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078    EFFECTIVE DATE OF ENDORSEMENT    February 1, 1990

### NOTICE OF ACCIDENT ENDORSEMENT

Paragraph A-1 "Notice of Accident" in Part Seven is changed to read:

>  1. The Insured shall give prompt notice to the Insurer if a claim
>     or injury occurs which appears to involve a loss equal to 33
>     1/3% or more of the Insured's Retention stated in Item 6 of the
>     Information Page of this policy.

    All other terms or conditions of this policy are not changed.  If this endorsement is
issued after the policy effective date, it must be signed by an Officer of the Insurer and
countersigned by a Licensed Countersignature Agent of the Insurer in those States which
require countersignature.

Signed at Stamford, Connecticut, this 27th day of February, 1990

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-45 (7/88)

GRC-I1

## ENDORSEMENT                         NO. 5

**INSURED**         San Diego County Cities Risk Management Authority

**POLICY NO.   XD-078      EFFECTIVE DATE OF ENDORSEMENT**   February 1, 1990

### LATE CLAIM REPORTING PENALTY ENDORSEMENT

Paragraph B. Limit of Indemnity by Insurer of Part Four is changed to read:

**B.**   Limit of Indemnity by Insurer:

The Insurer will indemnify the Insured for loss over the amount stated as Insured's Retention in Item 6 of the Information Page, except as stipulated in 2 below:

1.   The limit of indemnity for Workers Compensation will not exceed the limit stated in Item 7a of the Information Page. The limit of indemnity for Employers Liability Insurance will not exceed the limit stated in Item 7b of the Information Page. The total indemnity for Workers Compensation and Employers Liability combined will not exceed in any event the limit stated in Item 7c of the Information Page.

2.   If the Insured does not give the Insurer written notice of a claim as required by Paragraph A - Notice of Accident - in Part Seven, the Indemnity by the Insurer will be reduced as follows:

(a)   if such written notice is not received by the Insurer within one (1) year from the date that the Insured is required by Paragraph A in Part Seven to report the accident or claim, the Insurer's indemnity obligation for each loss over the amount of the Insured's Retention in Item 6 of the Information Page will be reduced by fifteen percent (15%).

(b)   if such written notice is not received by the Insurer within three (3) years from the date that the Insured is required by Paragraph A in Part Seven to report the accident or claim, the Insurer's indemnity obligation for each loss over the amount of the Insured's Retention in Item 6 of the Information Page will be reduced by forty percent (40%).

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 27th day of February, 1990

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-46 (4/89)

GRC-I1

**ENDORSEMENT**                                    NO.  6

INSURED        San Diego County Cities Risk Management Authority

POLICY NO. XD-078        EFFECTIVE DATE OF ENDORSEMENT       February 1, 1990

---

This policy is changed to provide:

**PART SIX - PREMIUM**, Section A. Premium Determination is amended to read as follows:

Premium will be determined on the basis of the entire payroll and other remuneration paid or payable to all employees and officers of the Insured.

Remuneration includes 1, 2, and 3 below:

1.  Payroll, salaries, commissions, bonuses, overtime pay, pay for holidays, vacations, pay for piece work, payments under profit sharing or incentive plans, the value of lodging, apartments, and meals received by employees as part of their pay, and the value of store certificates, merchandise, credits, or any other substitute for money received by employees as part of their pay.

2.  The entire amount received by any other person engaged in work which could make the Insured liable under Part One - Workers Compensation of this policy. This section 2 will not apply if the Insured gives proof to the Insurer that the employers of these persons lawfully secured their workers compensation obligations.

3.  As respects volunteer police and firemen, the payroll will be deemed to be $7,500 each person, each year.

All Other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 23rd day of May, 1990.

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT           NO. 7

INSURED              San Diego County Risk Management Authority

POLICY NO. XD-078     EFFECTIVE DATE OF ENDORSEMENT    February 1, 1990

This policy is changed to provide:

Endorsement No. 5, the Late Claim Reporting Penalty Endorsement is deleted in its entirety retroactive to its effective date.

All Other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 3rd day of August, 1990

GENERAL REINSURANCE CORPORATION

_Authorized Signature_

SI-EP-12

GRC-I1

# ENDORSEMENT                            NO. 8

**INSURED**          San Diego County Cities Risk Management Authority

**POLICY NO.  XD-078      EFFECTIVE DATE OF ENDORSEMENT**    February 1, 1990

This policy is changed to provide:

Endorsement No. 2, Claims Administration Endorsement is amended in part to read as follows:

| Claims Administrator | State |
|---|---|
| Corroon & Black Management, Inc.<br>P.O. Box 880337<br>San Diego, California  92108 | California |

All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 3rd day of August, 1990

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT                    NO. 9

INSURED          San Diego County Cities Risk Management Authority

POLICY NO. XD-078      EFFECTIVE DATE OF ENDORSEMENT      February 1, 1990

This policy is changed to provide:

Endorsement No. 7, Insured, is amended to read as follows:

San Diego County Cities Risk Management Authority

All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 24th day of August, 1990

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-12

GRC-I1

ENDORSEMENT                           NO.   10

INSURED          San Diego County Cities Risk Management Authority

POLICY NO. XD-078      EFFECTIVE DATE OF ENDORSEMENT   February 1, 1991

RENEWAL ENDORSEMENT

This policy is changed to provide:

For the period February 1, 1991 to February 1, 1992, the following Information Page items are amended as shown below:

| | | |
|---|---|---|
| Information Page Item 6 - Insured's Retention | $ | 250,000 |
| Information Page Item 7 - Insurer's Limit of Indemnity | | |
| Item 7a - Workers Compensation | $ | 10,000,000 |
| Item 7b - Employers Liability | $ | 5,000,000 |
| Item 7c - Workers Compensation & Employers Liability Combined | $ | 10,000,000 |
| Information Page Item 8 | | |
| Estimated Annual Remuneration | $ | 139,603,941 |
| Rate per $100 of Remuneration | $ | .168 |
| Estimated Annual Premium | $ | 234,535 |
| Advance Premium | $ | 235,000 |
| Minimum Annual Premium | $ | 199,000 |

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 25th day of February, 1991

GENERAL REINSURANCE CORPORATION

_Cheryl L'Cismaine_
Authorized Signature

SI-EP-11

GRC-I1

**ENDORSEMENT** NO. 11·

INSURED      San Diego County Cities Risk Management Authority

·POLICY·NO،  XD·078    EFFECTIVE·DATE OF ENDORSEMENT   February 1, 1991·

## CLAIMS ADMINISTRATION ENDORSEMENT

The policy is changed to provide:

Part Seven - Condition P. is added to this policy:

P.  Administration of Losses

The Insured will maintain a contract with the following claims service organization for any claims within the coverage of this policy:

| Claims Service Organization: | State |
|---|---|
| Bierly and Associates<br>7750 Dagget Street, #204<br>San Diego, California 92111 | California |
| Corroon & Black Administrative Services, Inc.<br>P.O. Box 880337<br>San Diego, California 92168-0007 | California |
| North American Claims Management<br>P.O. Box 1278<br>Spring Valley, California 92077 | California |

The Insured will give prompt written notice to the Insurer of:

    a.   termination or modification of the contract with the above named organization; or
    ·b.   if the Insured changes to another claims service organization.

    All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at·Stamford, Connecticut, this 25th day of February; 1991

                  GENERAL REINSURANCE CORPORATION

                  *Cheryl Germie*
                     Authorized Signature

SI-EP-40b (4/86)

GRC-I1

## ENDORSEMENT                     NO.  12

**INSURED**         San Diego County Cities Risk Management Authority

**POLICY NO. XD-078        EFFECTIVE DATE OF ENDORSEMENT   April 1, 1991**

This policy is changed to provide:

Item 1 of the Information Page, Insured is amended to include the following:

    .National City Joint Powers Financing Authority

       All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 29th day of July, 1991

                GENERAL REINSURANCE CORPORATION

                       *Cheryl Germaine*
                         Authorized Signature

SI-EP-12

GRC-IL

## ENDORSEMENT                    NO.  13

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078     EFFECTIVE DATE OF ENDORSEMENT    January 1, 1992

This policy is changed to provide:

Endorsement No. 2, Claims Administration Endorsement is amended in part to read as follows for the City of Escondido.

Claims Service Organization

Self Administered

        All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 22nd day of November, 1991

                              GENERAL REINSURANCE CORPORATION

                              *Cheryl Germaine*
                              Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT NO. 14

**INSURED**        San Diego County Cities Risk Management Authority

**POLICY NO. XD-078      EFFECTIVE DATE OF ENDORSEMENT      February 1, 1990**

### AUDIT ADDITIONAL PREMIUM ENDORSEMENT

This policy is changed to provide:

For an additional premium of $ 6,943, the final premium adjustment for the period February 1, 1990 to February 1, 1991 will be as stated below:

| | | |
|---|---|---|
| Actual Remuneration | $ | 127,008,070.38 |
| Rate per $100 of Remuneration | $ | .159 |
| Earned Premium | $ | 201,943 |
| Less Advance Premium | $ | 195,000 |
| Additional Premium | $ | 6,943 |

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Authorized Representative of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 22nd day of November, 1991

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-12

GRC-I1

**ENDORSEMENT**                              NO.  15

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078       EFFECTIVE DATE OF ENDORSEMENT     February 1, 1992

<u>RENEWAL ENDORSEMENT</u>

This policy is changed to provide:

For the period February 1, 1992 to February 1, 1993, the following Information Page items are amended as shown below:

| | | |
|---|---|---|
| Information Page Item 6 - Insured's Retention | $ | 250,000 |
| Information Page Item 7 - Insurer's Limit of Indemnity | | |
| Item 7a - Workers Compensation | $ | 10,000,000 |
| Item 7b - Employers Liability | $ | 5,000,000 |
| Item 7c - Workers Compensation & Employers Liability Combined | $ | 10,000,000 |
| Information Page Item 8 | | |
| Estimated Annual Remuneration | $ | 148,698,036 |
| Rate per $100 of Remuneration | $ | Flat |
| Estimated Annual Premium | $ | 236,000 |
| Advance Premium | $ | 236,000 |
| Minimum Annual Premium | $ | 236,000 |

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 6th day of March, 1992

GENERAL REINSURANCE CORPORATION

*Cheryl E Jermaine*

Authorized Signature

SI-EP-11

GRC-11

ENDORSEMENT                                          NO.  16

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078       EFFECTIVE DATE OF ENDORSEMENT   February 1, 1992

## GROUP SELF-INSURER FUND ENDORSEMENT

This policy is changed to provide:

1,     As used in this policy the word "Insured" means the Self-Insurers Fund (Fund) named in
       Item 1 of the Information Page.

       The word "Insured", when used in connection with the word "employee", or in connection
       with activity or operations of an "employer" also means an employer participant in the Fund.

2.     The phrase "employment by the Insured" means employment by an employer participant in
       the Fund.

       The word "employee" means an employee of an employer participant in the Fund.

3.     PART SEVEN - CONDITIONS, E, Subrogation - Recovery From Others; is revised to
       clarify that the Insurer's right of subrogation does not apply to the employer participant in
       the Fund whose injured employee was the cause of the loss.


       All other terms or conditions of this policy are not changed.  If this endorsement is issued
after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by
a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 6th day of March, 1992

                              GENERAL REINSURANCE CORPORATION

                              _____
                                   Authorized Signature

SI-EP-48

GRC-I1

ENDORSEMENT                NO.   17

INSURED        San Diego County Cities Risk Management Authority

POLICY NO.  XD-078        EFFECTIVE DATE OF ENDORSEMENT     March 1, 1992

This policy is changed to provide:

Item No. 1 of the Information Page, is amended to include the following named insured:

   Oceanside Building Authority

   All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 6th day of April, 1992

                              GENERAL REINSURANCE CORPORATION

                              Authorized Signature

SI-EP-12

GRC-I1

ENDORSEMENT                    NO. 18

INSURED          San Diego County Cities Risk Management Authority

POLICY NO. XD-078      EFFECTIVE DATE OF ENDORSEMENT        February 1, 1992

## INCLUSION OF ALLOCATED CLAIMS EXPENSES ENDORSEMENT

This policy is changed to provide:

1. Part One - Workers Compensation Insurance, Section B, is changed to read:

    B.   Loss means amounts, including related claim expenses, actually paid by the
    Insured as self-insurer under the Workers Compensation Law.

2. Part Two - Employers Liability Insurance, Section C, is changed to read:

    C.   Loss means amounts which the Insured legally paid as damages, including
    related claim expenses, because of bodily injury by accident or bodily injury
    by disease.  Bodily injury includes resulting death.

3. Part Five - Claim Expenses, is deleted in its entirety and replaced with the
   following:

    A.   Claim expenses of the Insured means its litigation costs, interest as required
    by law on awards or judgements, and its special claim investigation or legal
    expenses which can be directly allocated to a specific claim.  Claim expenses
    exclude:  Salaries and travel expenses of employees of the Insured, annual
    retainers, overhead and any fees paid to the Insured's service Company.
    B.   The Insurer has no duty to investigate, handle, settle or defend any claim,
    proceeding or suit against the Insured.

4. Part Seven, Condition D, Payment of Loss to Insured, is deleted in its entirety and
   replaced with the following:

    The Insurer will indemnify the Insured for any loss under this policy as follows:

Page 1 of 2

GRC-I1

## ENDORSEMENT                NO. 13

**INSURED**          San Diego County Cities Risk Management Authority

**POLICY NO. XD-078      EFFECTIVE DATE OF ENDORSEMENT**      February 1, 1992

1.   For Part One – Workers Compensation Insurance and Part Three - Other States
     Insurance - the Insured will pay all benefits, including related claim expenses,
     required of the Insured by the Workers Compensation Law.  The indemnity by the
     Insurer will be made at monthly intervals after the Insurer has received proofs of
     payments by the Insured.  Workers Compenstion awards shall not be settled on a
     lump sum basis without consent of the Insurer.

2.   For Part Two - Employers Liability Insurance - if damages and related claim
     expenses are awarded which the Insured legally must pay, the Insured shall pay
     such damages.  The indemnity will be made within 30 days after the Insurer has
     received proof of payment of such damages and claim expenses by the Insured.

     All other terms or conditions of this policy are not changed.  If this endorsement is issued
after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by
a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 21st day of May, 1992

                                   GENERAL REINSURANCE CORPORATION

                                   _____
                                          Authorized Signature

**Page 2 of 2**
**SI-EP-26 (11/84)**

GRC-11

## ENDORSEMENT

NO. 11

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  X-078          EFFECTIVE DATE OF ENDORSEMENT   May 20, 1992

This policy is changed to provide:

Endorsement No. 2, Claims Administration Endorsement is amended in part to read as follows:

| Claims Service Organization | State |
|---|---|
| HMC/Bierly & Associates<br>3954 Murphy Canyon Road, Ste 205D<br>San Diego, CA  92123 | California |
| Lindsey Morden<br>7839 University Avenue, #210<br>La Mesa, California  91941 | California |
| Corron & Black Management, Inc.<br>P.O. Box 880337<br>San Diego, CA  92108<br>Attn:  Rick Ranear, Claims Manager | City of La Mesa<br>California |
| City of Oceanside<br>350 North Ditmar Avenue<br>Oceanside, CA  92054 | California |

All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 8th day of June, 1992

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-12

GRC-11

## ENDORSEMENT                    NO. 20

**INSURED**          San Diego County Cities Risk Management Authority

**POLICY NO.  XD-078      EFFECTIVE DATE OF ENDORSEMENT**      February 1, 1992

This policy is changed to provide:

Item No. 1 of the Information Page is amended to include the following Named Insured:

  Encinitas Public Financing Authority

        All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 26th day of June, 1992

                    GENERAL REINSURANCE CORPORATION


                        Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT                NO. 21

INSURED          San Diego County·Cities Risk Management Authority

POLICY NO. XD-078          EFFECTIVE DATE OF ENDORSEMENT          February 1, 1991

## AUDIT RETURN PREMIUM ENDORSEMENT

This policy is changed to provide:

For a return premium of $15,026 , the final premium adjustment for the period February 1, 1991 to February 1, 1992 will be as stated below:

| | | |
|---|---|---|
| Actual Remuneration | $ | 130,937,038 |
| Rate per $100 of Remuneration | $ | .168 |
| Earned Premium | $ | 219,974 |
| Less Advance Premium | $ | 235,000 |
| Return Premium. | $ | 15,026 |

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 28th day of July, 1992

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-12

GRC-I1

ENDORSEMENT                    NO. 22

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078        EFFECTIVE DATE OF ENDORSEMENT        February 1, 1992

Endorsement No. 17 is cancelled and replaced with the following:

This policy is changed to provide:

Item No. 1 of the Information Page, is amended to include the following Named Insured effective February 1, 1992:

            Oceanside Building Authority

        All Other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 5th day of August, 1992

                            GENERAL REINSURANCE CORPORATION

                            _David J. Pettinicchi_

                            Authorized Signature

SI-EP-12

GRC-11

ENDORSEMENT                    NO. 23

INSURED          San Diego County Cities Risk Management Authority

POLICY NO. XD-078     EFFECTIVE DATE OF ENDORSEMENT          February 1, 1991

Endorsement No. 21 is cancelled in its entirety and replaced with the following:

### AUDIT ADDITIONAL PREMIUM ENDORSEMENT

This policy is changed to provide:

For an additional premium of $3,342, the final premium adjustment for the period February 1, 1991 to February 1, 1992 will be as stated below:

| | | |
|---|---|---|
| Actual Remuneration | $ | 141,870,357 |
| Rate per $100 of Remuneration | $ | .168 |
| Earned Premium | $ | 238,342 |
| Less Advance Premium | $ | 235,000 |
| Additional Premium | $ | 3,342 |

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Authorized Representative of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 4th day of November, 1992

GENERAL REINSURANCE CORPORATION

*David J. Pettrucchi*
Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT                    NO. 24

**INSURED**          San Diego County Cities Risk Management Authority

**POLICY NO. XD-078          EFFECTIVE DATE OF ENDORSEMENT**   November 2, 1992

This policy is changed to provide:

Item No. 1 of the Information Page is amended to include the following Named Insured:

Coronado Financing Authority

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 3rd day of December, 1992

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT NO. 25

**INSURED**     San Diego County Cities Risk Management Authority·

**POLICY NO. XD-078A    EFFECTIVE DATE OF ENDORSEMENT**     February 1, 1993

### RENEWAL ENDORSEMENT

This policy is changed to provide:

For the period February 1, 1993 to February 1, 1994, the following Information Page items are amended as shown below:

| | | |
|---|---|---|
| Information Page Item 6 - Insured's Retention | $ | 250,000 |
| Information Page Item 7 - Insurer's Limit of Indemnity | | |
| Item 7a - Workers Compensation | $ | 10,000,000 |
| Item 7b - Employers Liability | $ | 5,000,000 |
| Item 7c - Workers Compensation & Employers Liability Combined | $ | 10,000,000 |
| Information Page Item 8 | | |
| Estimated Annual Remuneration | $ | 152,470,278 |
| Rate per $100 of Remuneration | $ | Flat |
| Estimated Annual Premium | $ | 241,000 |
| Advance Premium | $ | 241,000 |
| Minimum Annual Premium | $ | 241,000. |

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 24th day of February, 1993

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-I1

GRC-11

## ENDORSEMENT     NO. 26

INSURED          San Diego County Cities Risk Management Authority

POLICY NO.  XD-078     EFFECTIVE DATE OF ENDORSEMENT   November 2, 1992

---

This policy is changed to provide:

Endorsement No. 24 is cancelled in it's entirety.

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 7th day of May, 1993

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-12

GRC-I1

**ENDORSEMENT**       **NO. 27**

**INSURED**      San Diego County Cities Risk Management Authority

**POLICY NO. XD-078A**    **EFFECTIVE DATE OF ENDORSEMENT**    February 1, 1993

This policy is changed to provide;

The following is a member participant of the San Diego County Cities Risk Management Authority:

San Diego Pooled Insurance Purchase Authority (SANDPIPA):

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 3rd day of August, 1993

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT       NO. 28

INSURED       San Diego County Cities Risk Management Authority

POLICY NO. XD-078B    EFFECTIVE DATE OF ENDORSEMENT      February 1, 1994

### RENEWAL ENDORSEMENT

This policy is changed to provide:

For the period February 1, 1994 to February 1, 1995, the following Information Page items are amended as shown below:

| | | |
|---|---|---|
| Information Page Item 6 - Insured's Retention | $ | 250,000 |
| Information Page Item 7 - Insurer's Limit of Indemnity | | |
| Item 7a - Workers Compensation | $ | 10,000,000 |
| Item 7b - Employers Liability | $ | 5,000,000 |
| Item 7c - Workers Compensation & Employers Liability Combined | $ | 10,000,000 |
| Information Page Item 8 | | |
| Estimated Annual Remuneration | $ | 152,368,870 |
| Rate per $100 of Remuneration | $ | FLAT |
| Estimated Annual Premium | $ | 246,955 |
| Advance Premium | $ | 246,955 |
| Minimum Annual Premium | $ | 246,955 |

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 23rd day of February, 1994

GENERAL REINSURANCE CORPORATION

Authorized Signature

SI-RP-11

GRC-I1

## ENDORSEMENT                    NO. 29

**INSURED**          San Diego County Cities Risk Management Authority

**POLICY NO. XD-078R     EFFECTIVE DATE OF ENDORSEMENT        February 1, 1994**

This policy is changed to provide:

Item 2 of the Information Page, Mailing Address is amended to read as follows:

      c/o City of Encinitas
      505 Vulcan S. Avenue
      Encinitas, California  92024

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 23rd day of February, 1994

                GENERAL REINSURANCE CORPORATION

                    Authorized Signature

SI-EP-12

GRC-11

## ENDORSEMENT                    NO. 30

**INSURED**        San Diego County Cities Risk Management Authority

**POLICY NO. XD-078B    EFFECTIVE DATE OF ENDORSEMENT**        February 1, 1994

This policy is changed to provide:

Endorsement No. 6 is amended in part as follows:

PART SIX-PREMIUM Section A. Premium Determination is amended to delete No. 3

All other terms or conditions of this policy are not changed. If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 23rd day of February, 1994

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-12

GRC-I1

## ENDORSEMENT                         NO. 31

**INSURED**         San Diego Counties Risk Management Authority

**POLICY NO. XD-078B      EFFECTIVE DATE OF ENDORSEMENT      May 15, 1994**

### CANCELLATION ENDORSEMENT

For a return premium of $159,533, this policy is cancelled short rate in its entirety, effective May 15, 1994 at 12:01 a.m. Standard Time.

All other terms or conditions of this policy are not changed.  If this endorsement is issued after the policy effective date, it must be signed by an Officer of the Insurer and countersigned by a Licensed Countersignature Agent of the Insurer in those States which require countersignature.

Signed at Stamford, Connecticut, this 12th day of October, 1994

GENERAL REINSURANCE CORPORATION

_____
Authorized Signature

SI-EP-13 (3/87)



**GENERAL REINSURANCE CORPORATION**
Financial Centre
P.O. Box 10350
Stamford, Connecticut 06904-2350

Excess Insurance Policy
For Self-Insurer Of
Workers Compensation and Employers Liability

In return for the payment of the premium and subject to all the terms of this policy, the Insurer agrees with the Insured named in Item 1 of the Information Page as follows:

## GENERAL SECTION

**A.  THE POLICY**

This policy includes the Information Page. It is a contract of insurance between the Insured and the Insurer. The only agreements relating to this Insurance are stated in this policy. The terms of this policy may not be changed or waived except by an endorsement made a part of this policy.

**B.  CONTINUOUS POLICY**

This policy is effective at 12:01 a.m. on the effective date stated in Item 3 of the Information Page and will remain in full force and effect until cancelled as provided in Part Seven - Conditions, Paragraph L of this policy. All of the provisions of this policy apply separately to each consecutive 12-month period beginning with the date shown in Item 3 of the Information Page in the same manner as if a separate policy had been written for each such consecutive period.

**C.  WHO IS INSURED**

The Insured is named in Item 1 of the Information Page. If the Insured is a partnership or joint venture, each partner or member of the joint venture is insured only in the capacity as employer of employees of the partnership or joint venture.

**D.  WORKERS COMPENSATION LAW**

Workers Compensation Law means the workers or workmens compensation law and occupational disease law of each state named in the Information Page. It includes any amendments to that law which are in effect during the term of this policy. It does not include provisions of any law that provides non-occupational disability benefits.

**E.  QUALIFIED SELF-INSURER**

The Insured represents that it is a duly qualified self-insurer under the Workers Compensation Law of each state named in Item 5a of the Information Page and will continue to maintain such qualifications during the term this policy is in effect. If the Insured should terminate such qualifications or if qualification of the Insured as a self-insurer is cancelled or revoked while this policy is in force, the amounts payable under this policy will not exceed the amounts which would have been payable if such qualifications had been maintained in full force and effect.

**F.  STATE**

State means any state of the United States of America and the District of Columbia.

## PART ONE – WORKERS COMPENSATION INSURANCE

A. The Insurer will indemnify the Insured for loss as a qualified self-insurer under the Workers Compensation Law in excess of the Insured's retention stated in Item 6 on the Information Page but not for more than the limit of indemnity stated in Item 7 of the Information Page.

B. Loss means amounts actually paid by the Insured as a self-insurer under the Workers Compensation Law.

C. This insurance applies to losses paid by the Insured as a qualified self-insurer under the Workers Compensation Law for bodily injury by accident or bodily injury by disease including resulting death, provided:

    1. the bodily injury by accident occurs during the period this policy is in force; or

    2. the bodily injury by disease is caused or aggravated by the conditions of employment by the Insured. The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force.

D. The Insurer will not indemnify the Insured for any payments made by the Insured in excess of benefits regularly required by the Workers Compensation Law if such excess payments are required because:

    1. of serious and wilful misconduct of the Insured;

    2. the Insured employed an employee in violation of law;

    3. the Insured failed to comply with a health or safety law or regulation;

    4. in violation of the Workers Compensation Law, the Insured discharged, coerced, or otherwise discriminated against any employee; or

    5. the Insured violated or failed to comply with any Workers Compensation Law.

E. The Insurer will not indemnify the Insured for any loss arising out of operations for which the Insured has rejected any Workers Compensation Law.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

A. The Insurer will indemnify the Insured as a qualified self-insurer of employers liability for loss in excess of the Insured's retention stated in Item 6 on the Information Page but not for more than the limits of indemnity stated in Item 7 of the Information Page.

B. Indemnity by the Insurer will be made only if the original suit and any related legal actions for damages for bodily injury by accident or disease was brought in the United States of America, its territories or possessions or Canada.

-2-

C. Loss means amounts which the Insured legally paid as damages because of bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

D. This insurance applies to losses paid by the Insured as a qualified self-insurer of employers liability for bodily injury which arises out of and in the course of the injured employee's employment by the Insured, provided:

1. the bodily injury by accident occurs during the period this policy is in force;

2. the bodily injury by disease is caused or aggravated by the conditions of employment by the Insured. The employee's last day of last exposure to those conditions of that employment causing or aggravating such bodily injury by disease must occur during the period this policy is in force; and

the employment is necessary or incidental to work conducted by the Insured in a state listed in Item 5a of the Information Page.

E. DAMAGES INCLUDE:

1. damages for which the Insured is liable to a third party by reason of a claim, suit or proceeding against the Insured to recover damages obtained by an injured employee of the Insured from the third party;

2. damages for care and loss of services of an injured employee of the Insured;

3. damages for consequential bodily injury to a spouse, child, parent, brother, or sister of the injured employee of the Insured; and

provided such damages in 1, 2, and 3 above are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by the Insured; and

4. damages because of bodily injury to an employee of the Insured arising out of and in the course of employment, claimed against the Insured in a capacity other than as employer.

F. EMPLOYERS LIABILITY INSURANCE EXCLUDES:

1. liability assumed under a contract;

2. punitive or exemplary damages;

3. bodily injury to an employee while employed in violation of law;

4. bodily injury intentionally caused or aggravated by or at the direction of the Insured;

-4-

5.  bodily injury occurring outside the United States of America, its territories or possessions, or Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily working outside these countries for the Insured;

6.  damages arising out of the Insured's violation of law in the discharge of, coercion of, or discrimination against any employee;

7.  any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law; or

8.  damages arising out of operations for which the Insured:

    (a) has violated or failed to comply with any workers compensation law, or
    (b) has rejected any workers compensation law.

## PART THREE - OTHER STATES INSURANCE

A.  This policy applies in other states not shown in Item 5a of the Information Page if an employee of the Insured is injured in such a state and if the work of such injured employee of the Insured was within the scope of such employee's employment, at the direction of the Insured, and was temporary and transitory in such other state provided the Insured is not insured or self-insured in such other state, and

1.  such other state is not listed as an exception in Item 5c of the Information Page;

2.  such injured employee was regularly employed in a state listed in Item 5a of the Information Page;

3.  the work in the other state was incidental to work in a state shown in Item 5a of the Information Page; and

4.  the work of such injured employee was not at a permanent or fixed location of the Insured subject to the Workers Compensation law in such other state.

B.  For any workers compensation benefits awarded under the law of any other state except those listed in Item 5c of the Information Page, the Insurer will indemnify the Insured only to the extent that the other state benefits do not exceed benefits which would have been paid to such injured employee under the workers compensation law of the state in which such employee is regularly employed.

C.  For any workers compensation benefits awarded under the U.S. Longshoremen's and Harbor Workers' Compensation Act, except if such Act is listed in Item 5c of the Information Page, the Insurer will indemnify the Insured only to the extent that those benefits do not exceed benefits which would have been paid to such injured employee under the workers compensation law of the state in which such employee is regularly employed.

-4-

## PART FOUR – INSURED'S RETENTION AND INSURER'S LIMIT OF INDEMNITY

**A.   Retention by Insured:**

The Insured shall pay for its own account without other insurance, all loss up to the amount stated in Item 6 of the Information Page as Insured's Retention.

**B.   Limit of Indemnity by Insurer:**

The Insurer will indemnify the Insured for loss over the amount stated as Insured's Retention in Item 6 of the Information Page. The limit of indemnity for Workers Compensation Insurance will not exceed the limit stated in Item 7a of the Information Page. The limit of indemnity for Employers Liability Insurance will not exceed the limit stated in Item 7b of the Information Page. The total indemnity for Workers Compensation and Employers Liability Insurance combined will not exceed in any event the limit stated in Item 7c of the Information Page.

**C.   How Retention and Limit of Indemnity Apply:**

The Insured's Retention and Insurer's Limit of Indemnity stated on the Information Page apply to losses paid by the Insured as a qualified self-insurer of Workers Compensation and Employers Liability as follows:

**1.**   To one or more employees because of bodily injury or death in any one accident.

**2.**   To any one employee for bodily injury or death by disease.

The inclusion of more than one legal entity as Insured in Item 1 of the Information Page will not increase the Insured's Retention nor the Insurer's Limit of Indemnity.

**D.   Accident:**

**1.**   Accident means each accident or occurrence or series of accidents or occurrences arising out of any one event.

**2.**   An accident is deemed to end 72 hours after the event commences. Each subsequent 72 hours is deemed to be a separate accident period.

**E.   Disease:**

Disease is an accident only if it results directly from bodily injury by accident.

## PART FIVE – CLAIM EXPENSES

**A.**   Claim expenses of the Insured mean its litigation costs, interest as required by law on awards or judgments, and its claim investigation or legal expenses which can be directly allocated to a specific claim. Claim expenses exclude: salaries and travel expenses of employees of the Insured, annual retainers, overhead and any fees it paid for claim administration.

-5-

B.  The Insurer will indemnify the Insured for a portion of the claim expenses incurred by the Insured. The amount of the indemnity will be the percentage of the Insured's claim expenses determined by the ratio that the amount of loss paid by the Insurer bears to the total amount of the loss. Such payments to indemnify the Insured for claim expenses are in addition to the Insurer's limit of indemnity.

C.  The Insurer has no duty to investigate, handle, settle or defend any claim, proceeding or suit against the Insured.

## PART SIX – PREMIUM

A.  **Premium Determination:**

Premium will be determined on the basis of the entire payroll and other remuneration paid or payable to all employees and officers of the Insured.

Remuneration includes 1 and 2 below:

1.  Payroll, salaries, commissions, bonuses, overtime pay, pay for holidays, vacations, pay for piece work, payments under profit sharing or incentive plans, the value of lodging, apartments, and meals received by employees as part of their pay, and the value of store certificates, merchandise, credits, or any other substitute for money received by employees as part of their pay.

2.  The entire amount received by any other person engaged in work which could make the Insured liable under Part One – Workers Compensation of this policy. This section 2 will not apply if the Insured gives proof to the Insurer that the employers of these persons lawfully secured their workers compensation obligations.

B.  **Estimated Premium:**

The estimated premium shown on the Information Page is an estimate and is subject to verification by inspection or audit.

C.  **Advance Premium:**

The advance premium stated in Item 8 of the Information Page is a deposit premium payable at the inception of this policy and will be retained by the Insurer until the end of each interim policy adjustment period.

D.  **Earned Premium:**

The earned premium will be determined at the end of each interim policy adjustment period by use of actual, instead of estimated, premium base. The Insured will promptly pay such earned premium to the Insurer. If the earned premium exceeds premium previously paid, the Insured will promptly pay such excess to the Insurer. If such earned premium is less than premium previously paid, the Insurer will promptly return the balance to the Insured. The earned premium for each 12-month term of this policy will not be less than the Minimum Annual Premium stated in Item 8 of the Information Page.

**H.**   <u>Termination of Policy:</u>

The termination date of this policy will be deemed the end of the final interim policy adjustment period. If the earned premium upon termination of this policy exceeds premium previously paid, the Insured will pay such excess to the Insurer. If such earned premium is less than premium previously paid, the Insurer will return the balance to the Insured.

## PART SEVEN - CONDITIONS

**A.**   <u>Notice of Accident:</u>

**1.**   The Insured shall give prompt written notice to the Insurer if a claim for an injury or disease occurs which appears to involve indemnity by the Insurer.

**2.**   The Insured shall also give prompt written notice to the Insurer if an injury of the following type occurs:

    **(a)**   a fatality;

    **(b)**   an amputation of a major extremity;

    **(c)**   any serious head injury (including skull fracture or loss of sight of either or both eyes);

    **(d)**   any injury to the spinal cord;

    **(e)**   any disability where it appears reasonably likely that there will be disability of more than one year; or

    **(f)**   any second or third degree burn of 25% or more of the body.

**3.**   Notice of accident given to the Insurer shall contain complete details on the injury, disease, or death. If a suit, claim or other proceeding is commenced because of an injury listed in above section 2 or on any injury which appears to involve indemnity by the Insurer, the Insured shall give the Insurer:

    **(a)**   all notices and legal papers related to the claim, proceeding or suit, or copies of these notices and legal papers; and

    **(b)**   copies of reports on investigations made by the Insured on such claims, proceedings, or suits.

**B.**   <u>Duties of Insured and Insurer:</u>

**1.**   The Insurer has no duty to investigate, handle, settle or defend any claims, suits, or proceedings against the Insured.

2. The Insurer has the right and shall be given the opportunity by the Insured to associate with the Insured in the defense, investigation, or settlement of any claim, suit or proceeding which appears to involve indemnity by the Insurer. In such association, the Insured and Insurer shall cooperate in all aspects of defense, investigation, or settlement.

## C. Appeals:

If the Insured does not appeal an award or judgment which exceeds the Insured's Retention, the Insurer has the right to take an appeal at its own cost and expense and shall be liable for costs, disbursements and interest related to the appeal. If the Insurer elects to appeal, the liability of the Insurer on such an award or judgment shall not exceed the limit of indemnity in Item 7 of the Information Page plus the cost and expense of such appeal.

## D. Payment of Loss to Insured:

The Insurer will indemnify the Insured for any loss under this policy as follows:

1. For Part One – Workers Compensation Insurance and Part Three – Other States Insurance – the Insured will pay all benefits required of the Insured by the Workers Compensation Law. The indemnity by the Insurer will be made at monthly intervals after the Insurer has received proofs of payments by the Insured. Workers Compensation awards shall not be settled on a lump sum basis without written consent of the Insurer.

2. For Part Two – Employers Liability Insurance – if damages are awarded which the Insured legally must pay, the Insured shall pay such damages. The indemnity will be made within 30 days after the Insurer has received proof of payment by the Insured.

## E. Subrogation – Recovery From Others:

1. The Insurer has the right to recover all payments which the Insurer has made to the Insured from anyone liable for such loss. If the Insured recovers from anyone liable for such loss, the Insurer shall first be reimbursed from such recovery to the extent of its payments to the Insured.

2. If the Insured does not commence an action or proceeding to recover damages from anyone liable for a loss paid by the Insurer, the Insurer has the rights of the Insured to recover damages from anyone liable for such loss. The Insured will do everything necessary to protect those rights and help the Insurer to enforce them. Any such recovery by the Insurer will be allocated as follows:

   (a) the Insurer will be reimbursed for all of its payments under this policy;

   (b) any balance of the recovery which remains after the Insurer has been reimbursed will be paid to the Insured.

-5-

3. Expenses of all proceedings to recover from anyone liable for injury covered by this policy will be allocated between the Insured and Insurer in the ratio represented by the allocation of any damages which have been recovered.

4. If such an action or proceeding undertaken solely by the Insurer results in no recovery, all related expenses will be paid by the Insurer.

5. If there is insurance coverage in excess of the Insurer's limit of indemnity under this policy and if subrogation recovery is obtained from anyone liable for loss, any such excess carrier will be reimbursed for any loss paid in excess of the Insurer's limit of indemnity before any reimbursement of the Insurer and Insured under the provisions of this Section E.

6. If there is no insurance coverage in excess of the Insurer's limit of indemnity and if there is a subrogation recovery in excess of the Insurer's limit of indemnity, the Insured will be reimbursed to the extent of any loss paid by the Insured in excess of the Insurer's limit of indemnity, before the Insurer is reimbursed under the provisions of this Section E.

F. <u>Actions Against Insurer:</u>

There will be no right of action against the Insurer unless the Insured has complied with all the terms of this policy.

G. <u>Other Insurance:</u>

If the Insured has other insurance, reinsurance, indemnity, or reimbursement agreement applicable to a loss for which the Insured would be indemnified under this policy, the indemnity under this policy will apply in excess of such other insurance, reinsurance, indemnity or reimbursement and will not contribute to such a loss with such other insurance, reinsurance, indemnity or reimbursement. This condition does not apply to other insurance, reinsurance, indemnity or reimbursement which the Insured has procured to apply in excess of the sum of the Insured's retention and the Insurer's limit of indemnity under this policy.

H. <u>Inspection:</u>

The Insurer has the right at any time, but is not obliged to inspect the Insured's operations and workplaces. Such inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. The Insurer may give reports to the Insured on the conditions found upon inspection. The Insurer does not undertake to perform the duty of any person to provide for the health or safety of the Insured's employees or the public. The Insurer does not warrant that the Insured's workplaces are safe or healthful or that they comply with laws, regulations, codes, or standards.

**I.   Audit:**

The Insured will keep records needed to compute the premium in accordance with Part Six – Premium and send copies of those records when the Insurer asks for such records. The Insured will also send them to the Insurer at the end of each interim policy adjustment period and upon termination of this policy. The Insurer has the right to examine and audit all records of the Insured which relate to this policy, including ledgers, journals, registers, vouchers, contracts, tax reports, disbursement records and programs for storing and retrieving data. Information developed by audit will be used to determine earned and final premium. The Insurer has the right to conduct audits during regular business hours while this policy is in force and within three years after the final settlement of all claims or payments made on account of bodily injury to employees throughout the term of this policy.

**J.   Assignment:**

An assignment of interest under this policy will not bind the Insurer unless an endorsement assigning interest under this policy is issued by the Insurer to be part of this policy.

**K.   Bankruptcy or Insolvency of Insured:**

Bankruptcy or insolvency of the Insured will not relieve the Insurer of its duties and liabilities under this policy. After the Insured's retention has been reached, payments due under this policy will be made by the Insurer as if the Insured had not become bankrupt or insolvent, but not in excess of the Insurer's limit of indemnity. Such payments will be made to the Trustee in Bankruptcy or as a Court of competent jurisdiction may ultimately direct.

**L.   Cancellation:**

The Insurer or Insured may cancel this policy at any time by advance written notice stating when the cancellation is to take effect. Such cancellation notice shall be not less than the number of days shown in Item 4 of the Information Page. If the Insurer cancels because of non-payment of premium by the Insured, the Insurer has the right to cancel this policy on ten days written notice to the Insured. Mailing notice of cancellation by registered or certified mail or delivery of such notice by personal service at the address shown in Item 2 of the Information Page will be sufficient to prove notice. If the Insured cancels this policy on a date other than at the end of any 12-month period following the effective date of this policy, the Insurer will determine earned premium in accordance with the short rate table in use by the Insurer. The Insured shall pay the earned premium determined for the cancelled policy. Any premium due the Insured will be returned promptly by the Insurer. Actual return of premium due the Insured is not a condition to the effectiveness of cancellation of this policy as provided in this Condition.

**M.   Sole Representative:**

If more than one Insured is named in Item 1 of this policy, the Insured first named in Item 1 of the Information Page will act on behalf of all insureds to give or receive notice of cancellation, receive return premium or indemnity, or request change in this policy.

N.   **Policy Conforms To Law:**

If terms of this policy are in conflict with any law applicable to this policy, this statement amends this policy to conform to such law.

O.   **Captions:**

The headings or captions used in this policy are for the purpose of reference only and shall not otherwise affect the meaning of this policy.

IN WITNESS WHEREOF, the Insurer has caused this policy to be signed by its President and Secretary in Stamford, Connecticut, but this policy shall not be binding on the Insurer unless countersigned by another officer or attorney-in-fact of the Insurer.

Secretary                                          President

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Albert E. Haverkamp, Lucas & Haverkamp Law Firm, 2211 Encinitas Blvd., #225 Encinitas, CA 92024 | **ELECTRONICALLY FILED** Superior Court of California, County of San Diego |

TELEPHONE NO.: 858 204-4634    FAX NO. (Optional):
E-MAIL ADDRESS: ahaverkamp@lucashaverkamp.com
ATTORNEY FOR (Name): Plaintiff City of Oceanside

**12/08/2022** at 08:26:08 PM

Clerk of the Superior Court
By Taylor Crandall, Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: 330 W. Broadway
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Hall of Justice

CASE NAME:
City of Oceanside v. General Reinsurance Corporation

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** [ ] **Limited** (Amount (Amount demanded demanded is exceeds $25,000) $25,000 or less) | [ ] Counter [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 37-2022-00049215-CU-IC-CTL  JUDGE: DEPT.: Judge Matthew C. Braner |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[x] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Three
5. This case [ ] is [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: November 9, 2022

Albert E. Haverkamp
_____
(TYPE OR PRINT NAME)                                    ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7060 |

| PLAINTIFF(S) / PETITIONER(S): | City of Oceanside |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | General Reinsurance Corporation |
|---|---|

CITY OF OCEANSIDE VS GENERAL REINSURANCE CORPORATION [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2022-00049215-CU-IC-CTL |

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge:  Matthew C. Braner          Department: C-60

**COMPLAINT/PETITION FILED:** 12/08/2022

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/12/2023 | 11:15 am | C-60 | Matthew C. Braner |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 West Broadway |
| MAILING ADDRESS: | 330 West Broadway |
| CITY, STATE, & ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |

FOR COURT USE ONLY

PLAINTIFF(S):   City of Oceanside

DEFENDANT(S):  General Reinsurance Corporation

SHORT TITLE:   CITY OF OCEANSIDE VS GENERAL REINSURANCE CORPORATION [IMAGED]

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>37-2022-00049215-CU-IC-CTL |
|---|---|

Judge: Matthew C. Braner    Department: C-60

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)

☐ Mediation (private)

☐ Voluntary settlement conference (private)

☐ Neutral evaluation (private)

☐ Other (*specify e.g., private mini-trial, private judge, etc.*): _____

☐ Non-binding private arbitration

☐ Binding private arbitration

☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Non-binding judicial arbitration (discovery until 30 days before trial)

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: *(Name)* _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____    Date: _____

_____    _____
Name of Plaintiff    Name of Defendant

_____    _____
Signature    Signature

_____    _____
Name of Plaintiff's Attorney    Name of Defendant's Attorney

_____    _____
Signature    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated:  12/09/2022

_____
JUDGE OF THE SUPERIOR COURT



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2022-00049215-CU-IC-CTL       CASE TITLE: City of Oceanside VS General Reinsurance Corporation [IMA

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.